**STATE v. STEEN**

[226 N.C. App. 568 (2013)]

STATE OF NORTH CAROLINA
v.
GEORGE MICHAEL STEEN, Defendant

No. COA12-1069

Filed 16 April 2013

1. **Sexual Offenses—child victim—motions to dismiss—suffi-
   ciency of evidence—credibility**

   The trial court did not err by denying defendant's motions to dis-
   miss the charges of first-degree sexual offense and sexual offense
   with a child. Although defendant argued the minor child victim was
   not credible, our courts have long recognized, and defendant con-
   ceded, that the credibility of witnesses and the proper weight to be
   given their testimony must be decided by the jury.

2. **Appeal and Error—preservation of issues—failure to argue
   at trial**

   Although defendant contended the minor victim was incompe-
   tent to testify in accordance with N.C.G.S. § 8C 1, Rule 601(b) in a
   sexual offenses case, defendant failed to preserve this issue under
   N.C. R. App. P. 10(a)(1) because he did not challenge the victim's
   competence at trial.

3. **Evidence—testimony—polygraph examinations—no limiting
   instruction required**

   The trial court did not err in a sexual offenses case by failing to
   issue a limiting instruction on its own motion for the jury to disre-
   gard any reference to a special agent's role as a polygraph examiner
   with the State Bureau of Investigation. The special agent's testimony
   contained no statements or suggestions that she administered a
   polygraph examination to defendant.

4. **Appeal and Error—preservation of issues—waiver—admis-
   sion of similar testimony—failure to cite authority**

   The trial court did not commit plain error in a sexual offenses
   case by admitting the challenged testimony from a special agent.
   Defendant waived his right to appellate review of any error that
   may have resulted from the admission of this challenged testimony
   because defendant offered similar testimony. Further, defendant's
   challenges to other portions of the special agent's testimony to
   which defendant failed to present argument supported by persua-
   sive or binding legal authority were deemed abandoned.

Appeal by defendant from judgment entered 28 March 2012 by Judge Robert C. Ervin in Lincoln County Superior Court. Heard in the Court of Appeals 11 February 2013.

*Roy Cooper, Attorney General, by Laura E. Crumpler, Assistant Attorney General, for the State.*

*Massengale & Ozer, by Marilyn G. Ozer, for defendant–appellant.*

MARTIN, Chief Judge.

Defendant George Michael Steen appeals from a judgment entered upon jury verdicts finding him guilty of two counts of first-degree sexual offense with a child in violation of N.C.G.S. § 14-27.4(a)(1), and one count of sexual offense with a child in violation of N.C.G.S. § 14-27.4A(a). We find no error.

The evidence presented at trial tended to show that M.S. was placed into the custody of the Lincoln County Department of Social Services ("DSS") on 2 November 2004, after he and his sisters were removed from his mother's home upon allegations that the children were neglected; M.S. was four years old. Immediately following his removal from his mother's home, M.S. was placed in the home of then-foster parents defendant and his wife, Jennifer Steen, for twenty-one days. Then, in an effort to reunite M.S. with his sisters, M.S. was removed from defendant's home and placed in another foster care home with his sisters, where M.S. remained for less than three months before the family determined that it could not "handle" all three children. M.S. was then returned to defendant's home for about two-and-a-half years until M.S. was removed again and returned to his biological mother for two months in an attempt at reunification. M.S. underwent a series of placements for the next two months, and was then placed for a third time in defendant's home in December 2007, where M.S. lived until he left for the last time in February 2009, when M.S. was eight years old.

According to April Gullatte, who was M.S.'s DSS foster care social worker from 2004 through September 2009, M.S.'s third placement with defendant ended when M.S. "was accused of acting out sexually at school, going up under the bathroom stall and trying to touch a child." After that incident, M.S. was placed in the home of Debra and Mickey Ledford, who were "level two therapeutic foster parents," "specially trained . . . to handle certain behavioral issues that children have that are in care."

Mr. Ledford testified that on one occasion when he was getting the bath water ready for M.S., M.S. asked Mr. Ledford if he could take a shower with him, and Mr. Ledford told M.S. that "big boys do not do this," "[w]e don't shower together." Then, after M.S. had been living in the Ledford home for some time, Mrs. Ledford testified that she and M.S. were "in the living room watching a Lifetime movie" when M.S. said, "[D]id I ever tell you about the time that [defendant] stuck his penis in my butt[?]" Mrs. Ledford testified that she said "no," and turned off the television. According to Mrs. Ledford, M.S. told her that "it happened in the shower," that "he done it [sic] quite frequently," and that "[defendant] would stop" if defendant's wife would walk into the bathroom, "[b]ut he would start again after she left the room."

At trial, then-eleven-year-old M.S. testified that, while he lived in defendant's house, defendant would take showers with him once or twice a week, which defendant himself admitted occurred at that frequency. Although defendant testified that the "only time" he took showers with M.S. was "when [they] were going somewhere and [they] had to hurry up and get ready so [they] could get going," M.S. testified that, when defendant took showers with him, defendant did "sexual things" to him.

According to M.S., while defendant was in the shower with him, defendant would have M.S. "get down on [his] knees" and defendant would move back and forth and "mak[e] [M.S.] suck his penis," which M.S. said felt "[w]eird and gooey" and "[l]ike soft" in M.S.'s mouth. M.S. also testified that defendant put his mouth on M.S.'s penis, and that "it just didn't feel right." M.S. further testified that defendant "sticked [sic] his penis in [M.S.'s] butt," and described that defendant would put his penis "in between [M.S.'s] butt crack," so that defendant's penis touched the part of M.S.'s bottom where the food comes out. M.S. also said that when defendant would stand behind him and put his penis in M.S.'s bottom, M.S. would stand on the sides of the tub and hold onto both the wall and the rod that holds up the shower curtain so that he would not slip and fall in the shower. While defendant was showering with M.S., M.S. said that defendant's wife would be out of the house or "somewhere in the house," and said that "she would open the blinds to see what we were doing but we would always stop then. He would tell me to stop." Finally, M.S. testified that defendant told M.S. that he would "do something to [M.S.] if [he] told" about what happened in the shower, "said he would hurt [M.S.] or get [M.S.] in trouble," and that M.S. "thought really [defendant] was going to hurt [him]." Additionally, M.S. said that defendant "told [M.S.] he would tell [defendant's wife] or someone else that [M.S.] was lying about what [M.S.] said and who believes little kids?"

M.S. said he did not tell defendant's wife because, "I don't want her to not think I'm telling the truth, which I was telling the truth. They are married, so I don't want to break them apart and he go to jail . . . ." M.S. said he reported the abuse to the Ledfords after he lived with them and got to know them because, he said, "I could trust them and they—and I trusted what they said because they said the truth."

In early 2010, Donna Corriher, the DSS social worker who took over M.S.'s case after he began living with the Ledfords, received an e mail from the Ledfords which described the allegations that M.S. reported to them. Upon receiving the e mail, Ms. Corriher filed a report with DSS, which initiated an investigation. Amy Cloninger, a family assessor investigator for Child Protective Services for DSS, was assigned to conduct the investigation into M.S.'s allegations.

On 2 February 2010, when M.S. was nine years old, M.S. was interviewed at the Child Advocacy Center, which interview was simultaneously observed through closed-circuit television by Ms. Cloninger, Ms. Corriher, and Detective Dennis Harris from the Lincolnton Police Department. During the interview, M.S. said, "I had sex with that man, [defendant] George Steen," and when asked what he meant by "sex," M.S. said that defendant "stuck his penis up [his] butt." M.S. also reiterated his allegations, including that "he did oral sex to [defendant] and [defendant] did it to him more than once," that defendant would make M.S. "stand on the rails" or sides of the tub and "they would have sex," and that "[i]t happened in the shower" and "didn't happen anywhere else." M.S. also repeated his allegation that, when defendant's wife would enter the bathroom, "they would stop because she might pull back the curtains."

Colden Quick, a therapist and licensed clinical social worker with Piedmont Family Services, testified that M.S. was referred to his practice for an evaluation after M.S. was involved in an inappropriate sexual contact with another student at school. Mr. Quick was admitted, without objection, as an expert in the field of clinical social work with a specialty in sexual abuse, and testified that M.S. exhibited behaviors that are consistent with children who have experienced sexual abuse. Mr. Quick further opined that it is not normal for a child of M.S.'s age to know about anal stimulation or penetration, or to have opinions about what anal stimulation feels like without having been exposed to it or having experienced it.

Kelly Holland, a therapist and clinical manager at Thompson Child Family Focus, a residential treatment facility for children who have

suffered trauma in their past, testified that, about a month into her therapy sessions with M.S., when they were talking about "good touch, bad touch, secret touch," M.S. mentioned that "someone had given him a secret touch and he didn't want to talk about it." A couple of sessions later, M.S. told Ms. Holland that defendant "had hurt him" and "had performed oral and anal sex on him and asked [M.S.] to do the same to him," and that, when defendant's wife walked in the bathroom that defendant "stopped the sexual abuse and she did whatever she needed to do in the bathroom and left and then it resumed." Ms. Holland said that the sexual abuse consisted of oral and anal sex and "fondling of [M.S.'s] bottom, chest and legs." Ms. Holland also testified that M.S. "expressed quite a bit of fear of [defendant]," and that M.S. said "on multiple occasions that he wanted [defendant] to be in jail and he wanted him to stay there" "[b]ecause [defendant] hurt him." Ms. Holland further testified that, while living in the residential facility beginning in August 2010, M.S. exhibited behaviors that included "[e]xcessive masturbation, poor boundaries with other people, touching of others, both accidental and on purpose— [in]appropriate ways—getting too close to other people," and "[s]ometimes using provocative language." Ms. Holland testified, without objection, that such behavior is not normal for a seven- to ten-year-old child who has not experienced sexual abuse, and that such behavior is "quite common" with children who have experienced sexual abuse.

Detective Harris testified that he received a report from DSS in February 2010 alleging that M.S. had been sexually abused by defendant, and recounted the acts constituting that abuse, which allegations were consistent with the testimony offered by each of the State's prior witnesses at trial. Detective Harris further testified that the report indicated that defendant told M.S. to say that, if anyone found out, that M.S. should say that it was defendant's brother who perpetrated the abuse.

With respect to M.S.'s truthfulness, the Ledfords both testified that M.S. lied or was untruthful on a number of occasions during the time he lived with them. Ms. Corriher, M.S.'s social worker, testified that lying was not an issue with M.S. "any more than other children lie like on an average," and said that M.S. "might tell a lie like if he thought he was going to get in trouble and once he was sat down [sic] and talked to about that, he might fess up to it." Ms. Cloninger, the DSS investigator, testified that, during M.S.'s interview, she observed that M.S. "showed that he knew the difference between the truth and a lie." Mr. Quick, M.S.'s therapist, testified that M.S. would tell him that "he didn't want to get anybody in trouble for things that he would say." Additionally, at trial, M.S. testified that he understood that it was important to tell the

truth "[b]ecause if you don't be honest [sic], then you——then you are not going to be trusted." When asked, "How do we know you're not lying now?," M.S. answered, "Because I changed. I know the truth. I tell the truth." "[T]his is serious right now." "That was a while back but now I am completely honest. I need to be honest . . . [o]r no one would trust me."

Defendant was indicted on two counts of first-degree sexual offense with a child and charged upon an information on one count of sexual offense with a child. At trial, defendant moved to dismiss the charges at the close of the State's evidence and at the close of all of the evidence, which motions were denied. Defendant was found guilty by a jury on each of the charged offenses, and was sentenced to a term of 300 months to 369 months imprisonment. Defendant appeals.

---

**[1]** Defendant first contends the trial court erred by denying his motions to dismiss because the State presented insufficient evidence of the charged offenses. After a careful review of defendant's argument, we find no error with respect to this issue.

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980). "The trial court in considering such motions is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight." *Powell*, 299 N.C. at 99, 261 S.E.2d at 117. "The trial court's function is to test whether a *reasonable inference* of the defendant's guilt of the crime charged may be drawn from the evidence." *Id.* "In so doing the trial court should only be concerned that the evidence is sufficient to get the case to the jury; it should not be concerned with the weight of the evidence." *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 652 (1982). "The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom . . . ." *Powell*, 299 N.C. at 99, 261 S.E.2d at 117. "[C]ontradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion." *Id.* "The defendant's

evidence, unless favorable to the State, is not to be taken into consideration." *Earnhardt*, 307 N.C. at 67, 296 S.E.2d at 653.

In the present case, defendant does not dispute, and the record reflects, that the State presented "relevant evidence" that "a reasonable mind might accept as adequate to support [the] conclusion" that defendant was the perpetrator of the charged offenses and that he committed each essential element of those offenses. *See Smith*, 300 N.C. at 78–79, 265 S.E.2d at 169. "What defendant argues as the basis for insufficient evidence in fact goes to the issues of credibility and weight to be given to the evidence." *See State v. Jordan*, 321 N.C. 714, 717, 365 S.E.2d 617, 619 (1988). Specifically, defendant argues that the testimony presented by the accusing victim M.S. was not credible—and thus insufficient— based on purported contradictions in M.S.'s testimony and discrepancies between M.S.'s testimony and defendant's witnesses' testimony. Nevertheless, our courts have long recognized, and defendant himself concedes, that "[t]he credibility of witnesses and the proper weight to be given their testimony must be decided by the jury—not by the court." *See State v. Orr*, 260 N.C. 177, 179, 132 S.E.2d 334, 336 (1963). Since "contradictions and discrepancies are for the jury to resolve and do not warrant dismissal," *see Powell*, 299 N.C. at 99, 261 S.E.2d at 117, and "[t]he defendant's evidence, unless favorable to the State, is not to be taken into consideration," *see Earnhardt*, 307 N.C. at 67, 296 S.E.2d at 653, we conclude that the trial court did not err when it denied defendant's motions to dismiss the charged offenses.

**[2]** We note that defendant asserts as a sub issue to his first issue on appeal that M.S. was incompetent to testify in accordance with N.C.G.S. § 8C-1, Rule 601(b). However, because defendant failed to challenge M.S.'s competence at trial and thus failed to preserve this argument on appeal, *see* N.C.R. App. P. 10(a)(1), and because any contradictions in M.S.'s testimony "may have been an appropriate subject for cross examination or a jury argument, [but] . . . in no way alter[] [M.S.'s] competence as a witness," *see State v. Carter*, 210 N.C. App. 156, 162, 707 S.E.2d 700, 705 (internal quotation marks omitted), *disc. review denied*, 365 N.C. 202, 710 S.E.2d 9 (2011), we decline to consider this assertion further.

Defendant next challenges testimony from North Carolina State Bureau of Investigation ("SBI") Special Agent Amanda Nosalek, who was called as the State's last rebuttal witness before the close of all of the evidence.

**[3]** Defendant first asserts that the trial court erred by failing to issue a limiting instruction on its own motion for the jury "to disregard any reference to [Special Agent Nosalek's] role as a polygraph examiner"

with the SBI. In support of his assertion, defendant directs this Court's attention to cases addressing the admissibility of testimony regarding polygraph examinations in North Carolina. However, our review of the entirety of Special Agent Nosalek's testimony, which occupies four pages of a two-volume, 366 page transcript, shows that her testimony contains no statements or suggestions that she administered a polygraph examination to defendant. When asked to describe her duties with the SBI, Special Agent Nosalek responded that she has worked "as a drug agent, worked drug investigations, criminal investigations, general investigations and in October of 2009, . . . took over as the District Polygraph Examiner." When asked whether, in addition to performing polygraph examinations, she "also assist[ed] other agencies in criminal investigations," Special Agent Nosalek replied, "Absolutely, as assigned by our District Supervisor." Finally, when asked whether she "conduct[ed] an interview as part of [her] duties with the SBI" with defendant in February 2010, Special Agent Nosalek testified that she conducted "a standard interview" with defendant. Thus, after reviewing the entire testimony offered by Special Agent Nosalek, we are not persuaded that the trial court's failure to instruct the jury *sua sponte* "to disregard any reference to [Special Agent Nosalek's] role as a polygraph examiner" would have caused the jury, as defendant urges, to "have been left with the impression" that defendant was questioned "as part of a polygraph examination." Accordingly, we find this argument is without merit.

**[4]** Defendant next challenges testimony elicited from Special Agent Nosalek that recounted defendant's opinions regarding "what [defendant] thought should happen to a person who had done something like this to a child" and whether "that person should get a second chance." Because defendant challenges this testimony for the first time on appeal, such challenges can only be reviewed for plain error. *See State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012) ("Unpreserved error in criminal cases . . . is reviewed only for plain error.").

"It is well established that the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character." *State v. Campbell*, 296 N.C. 394, 399, 250 S.E.2d 228, 231 (1979). Additionally, "[s]tatements elicited by a defendant on cross-examination are, even if error, invited error, by which a defendant cannot be prejudiced as a matter of law," *State v. Gobal*, 186 N.C. App. 308, 319, 651 S.E.2d 279, 287 (2007), *aff'd per curiam*, 362 N.C. 342, 661 S.E.2d 732 (2008), and "a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416

(2001), *supersedeas denied and disc. reviews denied and dismissed as moot*, 355 N.C. 216, 560 S.E.2d 141–42 (2002); *see also* N.C. Gen. Stat. § 15A-1443(c) (2011) ("A defendant is not prejudiced by . . . error resulting from his own conduct.").

Our review of the transcript reveals that, during cross-examination, defendant testified about the opinions he expressed to Special Agent Nosalek regarding whether he would want the person who hurt M.S. to be punished, whether such a person should be given a second chance, and what he thought should happen to somebody who abused M.S. Because defendant himself offered testimony that is of a similar character to the testimony from Special Agent Nosalek which defendant now challenges by this argument on appeal, we conclude that defendant has waived his right to appellate review of any error that may have resulted from the admission of this challenged testimony from Special Agent Nosalek. Accordingly, we overrule this issue on appeal. Defendant's challenges to other portions of Special Agent Nosalek's testimony for which defendant has failed to present argument supported by persuasive or binding legal authority are deemed abandoned. *See* N.C.R. App. P. 28(a), (b)(6).

No error.

Judges McGEE and CALABRIA concur.