STROUD, Judge.
Defendant Chico Fernando Talbert ("defendant") appeals from his conviction of robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury. On appeal, defendant argues that the trial court erred by denying his motion to dismiss the assault charge because there was insufficient evidence to support the allegation in the indictment that a knife inflicted the victim's serious injury. Defendant also argues that the trial court erred in admitting evidence in violation of both the rule against hearsay and the Confrontation Clause and by failing to provide a limiting instruction to the jury in relation to testimony from the lead detective regarding statements made by people who did not testify at trial. We hold that the trial court did not err by denying defendant's motion to dismiss, as there was ample evidence to support the allegation that the victim suffered injury by knife. We further hold that the trial court did not err-and certainly did not plainly err-when it declined to provide a limiting instruction after defendant opened the door to the admissible testimony of his own witness.
Facts
The State's evidence at trial tended to show that on Saturday, 20 December 2014, Michael Crump, Jr. ("Mr. Crump") was working as the manager of the Game Stop store at Blue Ridge Mall in Hendersonville, North Carolina. Mr. Crump arrived around 8:00 a.m., and the store opened earlier than usual-at 9:00 a.m.-since it was the holiday season. Mr. Crump was behind the register "as usual" when "a black gentleman came up to [him] and said 'I want a white PS4.' " Mr. Crump explained to the customer ("defendant") that the store had sold all of the white consoles and only had black ones left. After showing defendant another section of the store, Mr. Crump returned to the cash register near the front.
Defendant approached Mr. Crump again and asked if the store had any Xbox 1's. After inquiring into what model defendant wanted and learning that he wished to get the "high end" model, Mr. Crump went to the back storage room to retrieve it. Mr. Crump had to multitask since he was the only employee working at the time, and he answered the phone while going into the back room and spoke with a dissatisfied customer. At some point, their phone conversation paused, and Mr. Crump heard from behind him, " 'Give me that, N-word, or you're going to die.' " Mr. Crump turned around and saw a knife in his face. Mr. Crump "[did] not want to die over a $400 item." He tried to kick defendant to get him away from his body, which led to a "tussle" and Mr. Crump fell backward onto a ladder. Defendant ran out of the storage room and by the time Mr. Crump was able to get back into the main part of the store to look out the window, defendant had already left with the Xbox.
After Mr. Crump went back into the store, a customer noticed that he was bleeding and alerted him. Mr. Crump then noticed he had blood on his clothes and that his hand was bleeding as well. The customer wrapped Mr. Crump's arm up with a towel while he called 911. Mr. Crump gave the police the video from the store's surveillance cameras after they arrived.
On or about 20 January 2015, defendant was charged with one count of robbery with a dangerous weapon and one count of assault with a deadly weapon inflicting serious injury. Defendant's case went to trial on 3 August 2015. Mr. Crump testified about the incident, noting that he was terrified and that: "I don't want to die in generally [sic], but especially over an XBox." Although initially during the attack adrenaline kicked in and he did not feel anything, Mr. Crump later realized he had a clean cut on his finger and a gash on his bicep that required stitches. He initially thought the source of his injury was the ladder, but no one saw blood on it and officers found no blood in the back room. Although Mr. Crump could not remember being cut from a knife, "[t]he cut was very, very exact. It was very precise. It was a clean cut." He testified that he didn't "know any other way how [his] finger would have got cut[.]" As for the injury to his arm, Mr. Crump testified:
Same thing. I did fall. Nothing in that corner had blood on there. The officers were diligently trying to find any other kind of fluid around the back room, and nothing else was found. I thought when it happened that it was the ladder, but the officers didn't find any blood that day to my knowledge. And that was it.
On 4 August 2015, at the close of the State's evidence, defense counsel moved for dismissal of the charges. In relation to the assault with a deadly weapon inflicting serious injury charge, counsel argued:
Mr. Crump testified that at best he did not know what caused the injury to his arm. He did tell the hospital that it was not the knife, that it was in fact the ladder. So his story changed a little bit better. Nevertheless, the injury, there's no evidence or at least there's not enough, I think, to even get past evidence in the light most favorable to the prosecutor because the injury most likely came from the ladder. And I think that there is a causation requirement. I think the jury instruction makes that clear.
The State responded:
Your Honor, as to the assault, the way the jury instruction reads and the elements reads is that the victim was assaulted by the defendant. He used a deadly weapon, a knife in this case. And that he inflicted serious injury upon the victim. It doesn't say that it has to be with the weapon. In this case as you can see on the video, and the jury has seen that the assault took place, that he used a knife and as a result of that assault that the defendant committed on the victim that the victim was seriously injured. And he described those injuries. And I think in the light most favorable to the State it would be up to the jury to determine the injuries and the assault that happened.
Defense counsel responded by arguing:
[A]s to the injury, what-and I don't have the instruction right in front of me, but what it does say is that the person was injured or the-I guess, the suspect used the deadly weapon thereby causing the injury to, I guess, the victim. The word "thereby" means happened just from what you just heard. So the fact that they used the word "thereby" tells me and indicates to me that the injury needs to be as a result of the deadly weapon. And the injury in this case was not the result of deadly weapon. I think at best these could be lesser included offenses. However, I don't see this as being the felony assault.
The trial court ultimately denied the motion. Defendant raised the motion to dismiss again at the close of all evidence with no further argument, and the trial court once again denied the motion. A jury found defendant guilty on both charges. The trial court entered judgment on or about 6 August 2015. Defendant timely appealed to this Court.
Discussion
On appeal, defendant argues: (1) that the trial court erred in denying his motion to dismiss the assault with a deadly weapon inflicting serious injury charge because there was insufficient evidence to support the allegation in the indictment that a knife inflicted the serious injury to the victim; (2) that the trial court erred by allowing testimony without a limiting instruction to the jury in violation of the rule against hearsay; and (3) the trial court plainly erred by failing to give a limiting instruction in violation of the Confrontation Clause.
I. Motion to Dismiss
Defendant first argues that the trial court erred in denying his motion to dismiss the assault with a deadly weapon inflicting serious injury charge. Defendant claims that there was insufficient evidence to support the allegation in the indictment that a knife inflicted the serious injury to the victim, as the State presented evidence that the store clerk fell onto a ladder and the victim initially reported to the hospital that he was injured by falling onto the ladder.
The trial court's denial of a motion to dismiss is reviewed de novo on appeal. Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.
State v. Pressley , 235 N.C. App. 613, 616, 762 S.E.2d 374, 376, disc. review denied , --- N.C. ----, 763 S.E.2d 382 (2014) (citations and quotation marks omitted).
At trial, Mr. Crump testified as follows when questioned by the State about the incident:
Q. Okay. Thank you. You can sit back down. Now, Mr. Crump, do you know how you got the injury on your arm and, you said, the cut on your finger?
A. No. There-everything happened so fast, I have no idea how I got injured how I did. Everything happened just so quickly. I know when the ladder hit me, I obviously felt that pain. But nobody saw blood on the ladder or anything like that, so I have no idea of what-how I got hurt.
Q. Do you remember being cut from the knife?
A. No, not necessarily, no. The cut was very, very exact. It was very precise. It was a clean cut. And I don't know any other way how my finger would have got cut, so.
Q. And what about the one on your arm?
A. Same thing. I did fall. Nothing in that corner had blood on there. The officers were diligently trying to find any other kind of fluid around the back room, and nothing else was found. I thought when it happened that it was the ladder, but the officers didn't find any blood that day to my knowledge. And that was it.
On cross-examination with defendant's counsel, Mr. Crump was once again asked about the ladder and knife:
Q. Mr. Crump, on your direct testimony you stated that you weren't sure where you got the injury from, you thought it could have been a ladder, it could have been a knife; is that right?
A. Yes, sir. Right.
....
Q. And you were not punched, kicked or otherwise injured by the customer according to the record?
A. Yeah. Whoever-we didn't mention any kind of fighting or punching specifically while I was there. All I told them was, you know, my store got robbed, I got hurt, you know, and that was the brunt of it. We didn't get into detail of that. The ladder part, I did-I did in fact say that I thought I got hurt by the ladder, because that's what hit me through the video, so.
Q. So if the medical record states you tussled with the customer, but was not punched, kicked or otherwise injured, would that be a mistake in the record or do you just not recall?
A. I don't recall.
Q. That's fine.
A. I don't recall.
Mr. Crump's testimony, along with exhibits submitted detailing his injuries, was sufficient to support the/ allegation that Mr. Crump suffered an injury by knife. As the State notes, while it is true that Mr. Crump did not remember being cut with a knife and that he felt no pain from his injuries during the fight, he testified that he was in excruciating pain afterward and "the uncontroverted evidence shows that defendant brandished a knife and immediately got into a close-quarters struggle with [Mr.] Crump, that [Mr.] Crump's injuries were very real, and that [Mr.] Crump did not know of 'any other way' how he was cut in such a 'clean,' 'exact,' 'precise,' and 'deep' manner, other than with the knife." In addition, no one found any blood on the ladder and there was no evidence of any sharp edges on the ladder which could have caused the cuts.
At the close of all the evidence, the trial court instructed the jury as follows regarding the assault charge:
The defendant has been charged with assault with a deadly weapon inflicting serious injury.
For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt.
First, that the defendant intentionally assaulted the alleged victim with a knife.
Second, that the defendant used a deadly weapon. A deadly weapon is a weapon which is likely to cause death or serious bodily injury. A knife is a deadly weapon.
And third, that the defendant inflicted serious injury upon the victim. Serious injury is injury that causes great pain and suffering.
If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant intentionally assaulted the alleged victim with a knife, thereby inflicting serious injury upon the alleged victim, it would be your duty to return a verdict of guilty of assault with a deadly weapon inflicting serious injury.
Neither defendant nor the State raised any issues with the jury instructions to the trial court. These instructions laid out the elements of the charge and instructed the jury that to find defendant guilty of assault with a deadly weapon, it had to find that defendant "intentionally assaulted the alleged victim with a knife[.]"
Defendant claims in his brief that the trial court accepted the State's argument at trial that the serious injury could have been inflicted with the ladder. At trial, the State argued against defendant's motion to dismiss the charges by noting that the jury instructions read: "And that he inflicted serious injury upon the victim. It doesn't say that it has to be with the [knife]." Defendant contends that this alleged ruling by the trial court created a "fatal variance" between the indictment-which identified a knife as the weapon-and the evidence presented at trial-that the victim was injured by a ladder, not a knife.
As the State notes, defendant's claim that the trial court decided that the weapon in the indictment need not be the weapon used to injure the victim is nothing more than a "straw man" set up by defendant with no basis in the record. The State did make this argument, but the trial court made no such ruling. The trial transcript makes clear that after considering the motions to dismiss, the trial court simply denied the motion, without any statements indicating that it was basing its decision on or "adopting" arguments by one side or the other. Since the evidence supports a finding that the victim was injured by the knife and the jury instructions were for a knife-and no objection was made to those-we hold that the trial court did not err in denying defendant's motion to dismiss the assault with a deadly weapon inflicting serious injury charge.
II. Admission of Evidence Over Hearsay Objection
Defendant next argues that "[t]he trial court erred by allowing, over objection, [Detective Thiel]'s testimony that other callers, who did not testify, informed police that [defendant] was the perpetrator and the trial court did not give a limiting instruction to the jury in violation of the rule barring hearsay." We had difficulty discerning whether defendant's argument is that the trial court should have given a limiting instruction, since one was never explicitly requested, or whether he is simply saying that the evidence itself should not have been admitted. Regardless, we ultimately reach the same conclusion either way.
We also note that defendant flirts with one argument that he did not actually raise on appeal, regarding a photo lineup. Several times, defendant mentions that "the photo lineup that was not double blind because the lead detective was present" and refers to N.C. Gen. Stat. § 15A-284.52(b)(13) (2015). But defendant did not raise any objections on this issue before the trial court, nor does he attempt to argue it as an independent issue on appeal, so we have not considered it.
"This Court reviews a trial court's ruling on the admission of evidence over a party's hearsay objection de novo ." State v. Hicks , --- N.C. App. ----, ----, 777 S.E.2d 341, 348 (2015), disc. review denied , 368 N.C. 686, 781 S.E.2d 606 (2016). Where, however, a defendant fails to raise a specific objection to the admission of certain evidence, then this Court's review is limited to plain error when requested. See N.C. R. App. P. 10(a)(4) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").
For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]
State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations, quotation marks, and brackets omitted). "Moreover, a defendant who invites error waives his right to all appellate review concerning the invited error, including plain error review." State v. Jones , 213 N.C. App. 59, 67, 711 S.E.2d 791, 796 (2011) (citation, quotation marks, ellipses, and brackets omitted).
This case is somewhat unusual in that the testimony which defendant argues on appeal was improperly admitted initially came from his own witness on direct examination, with follow-up questioning on cross examination by the State and redirect by defendant. Defendant called Detective Thiel as a witness, and during direct examination, defense counsel asked Detective Thiel "why he didn't obtain a search warrant, because he could have." Detective Thiel's answer referred to a call from a Crime Stoppers caller who "said that there was another person with [defendant]." Defense counsel objected to his own witness's testimony, stating: "Objection. Said what another-objection." The trial court responded: "Well, I will sustain it. You cannot testify as to what someone else said." Defendant's counsel did not make a motion to strike Detective Thiel's answer, but he ended this line of questioning.
On cross-examination with Detective Thiel, the State repeated defendant's question and asked why a search warrant was never requested for defendant's house:
Q. And [defense counsel] asked you about getting a possible search warrant for this house. Why was that not done?
A. I didn't get a search warrant for the house, I felt with Mr. Crump's-how assertive and how positive he was about his identification and also the other calls that we had received-
[Defense counsel]: Objection.
THE COURT: Well, overruled. He is not offering it for the truth of the purpose therein. He is making a statement as to why he did not get the search warrant. It is not hearsay.
[Defense counsel]: I'm not saying it's hearsay, but-
[The State]: It's his witness, Your Honor.
[Defense counsel]: -he says multiple calls. We've only heard about one call.
THE COURT: Well, you will have the right to redirect. You may answer the question.
(Emphasis added). Thus, defendant's objection in this instance was specifically not based on hearsay but only that Detective Thiel had mentioned just one phone call previously. Detective Thiel then finished his answer, referring again to other phone calls, and defendant made no objection at this time:
A. Again, based off-the reason I did not get the search warrant is because Mr. Crump was so assertive and so positive in his identification that the suspect was [defendant] that I-once I received that information and also the other phone calls identifying [defendant] , I moved to the other part of the investigation to try to identify the driver. I felt like I had-I had-I had arrested him, I had handled one half of it, and I was going to try to handle the other half and find out who the driver was and arrest that person also.
Q. And you followed all leads that you had available?
A. I did.
(Emphasis added).
Later, during redirect, defense counsel revisited the questions regarding why only two fingerprints were collected at the scene:
Q. So basically you just didn't do it because you thought that it would be a waste of time?
A. Not that it was a waste of time. I don't believe that it was a waste of time. I just felt like it wasn't going to offer me anything given that there could be multiple prints and that the rest of the case, the rest of the investigation, I had other positive identifications. I didn't feel like I needed to analyze those fingerprints.
Q. And that's really-that's the reason is you felt like you didn't need to?
A. I didn't feel like it was going to offer me, given what type of prints they may have been.
Q. You just felt like with Mr. Crump's identification and with Ms. Durham calling in that that was enough?
A. There was more than just Ms. Durham calling in .
[Defense counsel]: Judge, I think I need to be heard.
THE COURT: All right. Ladies and gentleman, at this time I'm going to ask that you go to the jury room....
....
(The jury left the courtroom.)
....
[Defense counsel]: Judge, he has made reference to multiple calls identifying [defendant]. And that is incredibly prejudicial when there's no foundation that's been laid for these other calls. The reason there's no foundation being laid is because those witnesses aren't here. It's hearsay. And he is testifying to other people calling in.
And Judge, I would ask that the jury be given an instruction to ignore anything he has said about other people calling. I asked him about Melinda Durham and Michael Crump. I didn't ask him about the other callers. And I think this has created a problem.
THE COURT: Well, it created a problem that you create by opening the door by asking him questions without thinking about the results of those questions. You opened the door repeatedly through your direct examination of this officer as to why he didn't obtain a search warrant. Did you not?
[Defense counsel]: I asked him why he didn't obtain a search warrant, because he could have.
THE COURT: But now he has given you a reason why he didn't. You didn't think that was going to come out?
[Defense counsel]: No, sir. All right. I understand.
....
THE COURT: ....[W]hat he is doing is giving a reason why he didn't get a search warrant, why he didn't look for fingerprints. Now, you elicited he didn't get a search warrant, you didn't test for fingerprints or at least test them against the defendant's fingerprints. And he is giving the reasons why he didn't do that.
[Defense counsel]: Yes, sir.
THE COURT: Now, I'm not going to let him testify as to what these other people said. But you went down that hole.
....
THE COURT: Now, I do not want you to testify about what people said.
[Detective Thiel]: Yes, Your Honor.
(Emphasis added).
As the trial court noted, defense counsel "went down that hole." He started digging the hole by calling Detective Thiel to testify and asking questions about why he did not seek a search warrant, and he dug it deeper on redirect when he pushed Detective Thiel to explain why more fingerprints were not taken off the ladder. We are not entirely sure if we should address defendant's argument based on plain error-since he failed to object to several instances of testimony he now presents on appeal and the objection he did make was specifically not based on hearsay-or invited error, since he called Detective Thiel as his own witness and asked him the questions which elicited the answers he now claims as error. See, e.g. , State v. Steen , 226 N.C. App. 568, 575, 739 S.E.2d 869, 875 (2013) ("It is well established that the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character. Additionally, statements elicited by a defendant on cross-examination are, even if error, invited error, by which a defendant cannot be prejudiced as a matter of law, and a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." (Citations, quotation marks, and brackets omitted)).
Defendant argues that "the hearsay and Confrontation Clause violations flowing from the trial court allowing the jury to hear the lead detective tell them multiple times during trial that other callers identified [defendant] as the perpetrator was incredibly prejudicial." In his appellate brief, defendant asks for de novo review regarding a hearsay objection. The transcript shows, however, that the only time Detective Thiel testified about the other phone calls identifying defendant, defendant did not object on hearsay grounds (the first time) or at all (the second time). Additionally, Detective Thiel's references to other callers never went into detail about what the callers said, only that he had received additional calls, and the calls were one reason-along with the certainty of Mr. Crump's identification and the videotape of the assault-he did not pursue a search warrant or additional fingerprint evidence.
But even if we generously review for plain error-instead of invited error-the admission of evidence must first be error, and Detective Thiel's testimony was not hearsay. As the trial court succinctly, and correctly, stated:
He is not offering it for the truth of the purpose therein. He is making a statement as to why he did not get the search warrant. It is not hearsay.
Detective Thiel was explaining why he conducted the investigation as he did. He did not say what the callers said; he was explaining why he did not get a search warrant for defendant's home. This purpose was "not for the truth of the matter asserted. No admission of hearsay occurred, and thus analysis of the plain error argument is unnecessary." State v. Leyva , 181 N.C. App. 491, 500, 640 S.E.2d 394, 399 (2007).
Furthermore, even if any of Detective Thiel's testimony noted by defendant was in error, defendant's claim that it was "incredibly prejudicial"-when weighed against the other evidence the jury heard-is unfounded. In addition to eyewitness testimony, the jury saw the surveillance video from the night in question and heard about both the photographic lineup in which the victim identified defendant and Mr. Crump's in-court identification of defendant as the perpetrator of the offense. Mr. Crump testified that he was able to see defendant's face at the time he was injured and that he had "no doubt in [his] mind" that defendant was the one who robbed him. Accordingly, we find no error.
III. Plain Error: Lack of Limiting Instruction and Confrontation Clause
Finally, defendant argues that the trial court committed plain error by failing to give a limiting instruction to the jury regarding Detective Thiel's testimony on other callers in violation of the Confrontation Clause. Defendant mentions the Confrontation Clause several times in his appellant brief and asks for plain error review of the trial court's failure to give a limiting instruction on this basis. But to the extent that defendant raises this argument of a Confrontation Clause violation for the first time on appeal, we decline to address it further, as this Court generally does not review constitutional arguments for the first time on appeal. See, e.g. , State v. Haddock , 191 N.C. App. 474, 478-79, 664 S.E.2d 339, 343 (2008) ("In general, a constitutional issue may not be raised for the first time on appeal."). Also, as discussed above, defendant opened the door to all of the testimony.
Furthermore, defendant's requested instruction was: "And Judge, I would ask that the jury be given an instruction to ignore anything he has said about other people calling." This request was made after defendant had failed to object several times to this evidence, so perhaps it is more properly considered simply an objection made too late. As discussed above, the evidence in question was both (1) elicited by defendant, and (2) not hearsay. Beyond this, we are unable to discern any substance to defendant's confrontation clause issue-which was not raised before the trial court at all-and thus we will not address it further.
And here too, even if we generously assume the failure to give an instruction was error, given the overwhelming evidence of guilt in this case, defendant once again cannot meet the difficult burden of demonstrating plain error. Accordingly, we find no error.
Conclusion
In sum, since there was sufficient evidence to support the allegation in the indictment that Mr. Crump suffered a serious injury from a knife, we hold that the trial court did not err by denying defendant's motion to dismiss. We also hold that although defendant opened the door to Detective Thiel's testimony, it was offered for a valid non-hearsay reason of explaining why Detective Thiel found it unnecessary to collect additional fingerprints or obtain a search warrant, and the trial court did not err-plainly or otherwise-by admitting such testimony into evidence.
NO ERROR.
Report per Rule 30(e).
Judges ELMORE and McCULLOUGH concur.